The construction attempted to be imposed upon the act of 1777, respecting the lands that might accrue by treaty or conquest, is not correct. It is contradicted by the case of Preston v. Browder, supra, in which those words are distinctly considered as words of grant of all the lands within the territorial limits of the State then held by Indians, and which might be subsequently obtained from them by cession or conquest; and the ground of decision in that case was that the entry had been made before any such treaty or conquest, and while they remained Indian lands. But even if those words in the act of '77 operate by way of exception and not of grant they will not affect this entry, because the act of 1783 again opens the whole State for entry, without using any such words, and restrains entries only within the Indians' lands as such. The same act of 1809 also supports this construction.
The facts as regards the other point made in the case are that the complainant made his entries, paid the fees and the purchase-money, obtained warrants of survey directed to the county surveyor, to whom he frequently applied to execute them, and who declined, and gave complainant a deputation; that complainant waited for the surveyor to make the surveys, until a forfeiture was close at hand, for the want of surveys; that he again applied, was again refused, and to prevent a lapse of his entry finally made the surveys for himself; his surveys have been certified into the proper offices and there accepted and grants there on issued to him. The defendant, with a full knowledge of his first purchase and of all the attendant circumstances, has by spoliation and deceitful practices contrived to get the first grants.
The motion to dismiss upon this ground can only be supported because, by law, a survey made under any circumstances (154) by a surveyor for himself, however, fair, although accepted at the public offices and approved as the foundation *Page 79 
of a grant, is utterly nugatory. It is the business of courts to expound, not to give law. What says the written law? The act of 1777, ch. 1, sec. 3, tells us that any citizen may enter; of course it is lawful for a surveyor to enter. There is to be but one surveyor in each county — sec. 2 — and no provision is made for a deputy. By sec. 14 the surveyor takes an oath and gives bond for the faithful discharge of his duty. The only mode of ripening the entry into a grant is upon a survey made by him; sec. 10. By sec. 15 he incurs a penalty of £ 500 and a forfeiture of office by any misconduct. And the act in sec. 18 makes a special provision for the entry-taker making entries for himself before a justice of the peace, and prohibits his entering in any other mode. But there is no clause prohibiting entries or surveys being made by the surveyor; there is not an expression or intimation in exclusion of this officer; but as far as general words and necessary implication can go he is permitted to survey for himself. The attention of the Legislature was evidently drawn to the subject: they have made the distinction between the entry-taker and the surveyor, and it is decent to presume, upon good reasons; but if there be a defect it is not our duty nor in our power to remedy it. The act of 1779, ch. 6, authorized the surveyor to appoint a deputy who should be qualified as his principal and for whose conduct the principal should be responsible. A deputy may do any act which it is lawful for his principal to do. 1 Salk., 95; 5 Cranch., 243, 248. The acts of Assembly do not therefore present any such prohibition.
But it is said to be a principle of the common law that in all offices of trust the act of the officer is null where he has a personal interest. Should this even be true at the common law, and as to common law officers, it does not follow that the Legislature may not depart from it as to an office created by statute. The expediency is with them. The express provision (155) made respecting the entry-taker, and the omission as it respects the surveyor, was an adoption of this supposed principle in part and a rejection of it in part. But there is in fact no such principle of the common law. If there be, important, extensive, and highly active as it would be, we should find it frequently stated in judicial decisions, or in authoritative treatises of the law. But nothing like it is found. "No man shall be a judge in "his own cause." 8 Rep. 118; Com. Digest, Title Justices, 1, 3. This position is admitted. In its terms it applies to judicial decisions. It is of the essence of the administration of justice — of the expression of law — that the arbiter be neuter. The restriction of the principle to judicial functions is a negative as to all others. *Page 80 
Offices are judicial, or ministerial. There are many important distinctions between them. The former cannot be exercised by deputy, is not grantable in reversion. The latter may be. 1 Inst. 3. B.; Cro. Car. 279, 555, 557.
The case of a sheriff has been relied upon by the other side, upon the authority of Comyn's Digest, in which it is said that a sheriff cannot execute process in which he is concerned. The office of sheriff is of great antiquity, and is regulated by many rules of which the origin is now unknown, and applicable to it in particular. But the principle thus broadly laid down must be restrained by the case put in illustration of it. The case is that of an Extent, and the only authority is Moor. Upon an Extent, the sheriff acts judicially. Bingham, 230, 1, 2, 3. So likewise does he on all inquisitions. Com. Dig. Tit. Return, B. 2. The sheriff executes all writs directed to him; but where it is alleged that he is of kin, a party, or partial, they are then directed to the coroner. 1 Bl. Com., 449; Dyer, 188; (156) Bing., 222. The case of Weston v. Coleson, 1 Wm. Bl., 506, cited on the other side, proves that the direction of a writ to the sheriff in his own cause is irregular, and it will be set aside without costs. But the act is not null; it is only irregular. The rule that a sheriff shall not buy at his own sale is founded on a different principle than that stated. There must be two parties to every contract of sale and purchase. Parties are essential, and therefore a man cannot sell to himself. The cases referred to by Sugden, establish only a principle in equity, that a trustee, purchasing at a sale of his cestui que trust's
property, buys liable to his equity, if he comes in due time to set it aside. The true doctrine is stated in 5 Ves. 580. If it be objected, that public policy requires such a principle: the answer is, that the judges of policy, and not the judges of law, must decide on the force of that assertion. Both tribunals have determined against the existence of such a general principle; and clerks issue writs in their own causes, and record the verdicts and judgments, and keep the records; a register records and certifies his own deeds; the Secretary of State and the Governor issue grants to themselves; the speakers of the General Assembly certify their own pay. The case of McKinzie v. Crow, 2 Bin., 105, decides the survey to be good, if previously authorized by the principal surveyor, or subsequently ratified by him. Both have been done here; and, indeed, the act of the deputy is that of the principal in every case.
But if the objection be good, this defendant cannot make it. Both parties have grants for the same land: his by means of *Page 81 
fraud, are of an elder date. The complainant's prayer is to be put into the same state in which he would have been but for the defendant's fraud.
Every kind of artifice by which another is deceived, is a fraud, and equity has an universal jurisdiction of them, except as to frauds in obtaining wills. 1 Mad. Eq., 203, 205. A verdict, decree, probate, allotment of dower, and fine, obtained (157) by fraud will be set aside. Id., 236, 237. We were entitled to suspend his grant by caveat, and prevent its issuing — his fraud prevented the exercise of right, and we now ask to have it on proving the fraud. His fraud has converted the defendant into a trustee for us, and we have a right to consider his legal title obtained for our benefit. The entry and payment of the purchase money, gave complainant an equitable title, and he was entitled to have it perfected into a legal title by grant. The defendant has improperly obtained that himself, with notice of our right, and, therefore, in trust for us. He cannot object that we have not surveyed. If we were asking a grant from the State, she might perhaps deny it on that ground. But the State is satisfied: the survey was fairly made, and she has given us a grant. We are not, therefore, seeking a grant from the State, but the benefit of one which the defendant, as our trustee, has obtained. The defendant cannot cavil against the title of his cestui que trust. Nor the perpetrator of fraud be allowed to clothe himself with the defensive rights of the State, whose title he has improperly assumed. Fraud will never be encouraged in that way. 2 Wn. Rep., 116. At all events, the Court will decree a cancellation of the defendant's grants, and leave the validity or invalidity of the complainant's grant to be determined between him and the State.
In Reply. — The rule with regard to sheriffs is founded on their interest, and extends as well to their ministerial as their judicial functions. It would seem, that an interested person should not act in either capacity. In the case in Wm. Bl. the sheriff did not act judicially. His judicial authority consists in holding the county courts: his ministerial office in executing all writs and process, Com. Dig. Tit. Viscount, C. 1, and embraces an extent. In inquisitions, he does not (158) act judicially; for a deputy may preside in inquiries upon default, and the judicial officer cannot be deputed.
If, from necessity, the surveyor may survey for himself, the privilege should not be extended farther than the actual necessity requires. It could not be necessary that the complainant should survey for himself. He might have compelled the surveyor to do *Page 82 
it for him, or had his remedy upon refusal; or he might have obtained another deputy.
Again: If a deputy may survey for himself, he should show that both he and the chain-carriers have been duly qualified by taking the oaths prescribed. They are facts within the complainant's own knowledge, and are necessary parts of his case, and ought to be stated in the bill; although third persons need not state them, because the acts of an officer, defacto, are valid as to them.
It is said, that the proceedings have been ratified by the proper officers, and therefore are good, upon the authority of 2 Bin., 105. That case does not decide that such ratification validates the survey; it only says, that it is clearly bad without it. And the judges there complain of the inconvenience arising from such evidence of title; which is a warning to us to make no such precedent here. The ratification is of no force in this State. The governor issues the grant as a matter of course, when the survey is returned, and the grantee takes it at his peril, as to the regularity of his previous proceedings. And if the Court sees that it has issued improvidently, they will not aid the complainant, but leave him where he is.
The complainant is not entitled to relief, by having the defendant's grants put out of his way, or by converting him into a trustee. If the first be done, the Court will aid in cheating the State, or the decree will be nugatory. If the State has (159) any means of revising the grants, the decree will do him no good; for they ought to be vacated. If they can be vacated on account of the surveys, then he has no title which this Court can uphold or aid.
Nor can Walker be converted into a trustee. If his grants be regular, A very should place himself in the same situation to ask a conveyance from him, as to ask one from the State. But by the showing in the bill, the grants of both parties are liable to the same objections, and both have been guilty of the same offense against the State. A complainant must come here with clean hands, and the Court will never, for him, separate the foul from the fair part of his case, for the sake of giving him relief. Where parties are in pari delicto, courts refuse to interfere, except in cases where public policy requires it. 1 Fonb. Eq. 25, 138; 2 Chan. Cas. 15; 1 Vern. 452; 2 Vern. 603; 1 Chan. Cas. 202; 6 T. R. 409; Ves. 581; 4 East., 372; 1 Ves. 277, 206; 4. Ves. 811; 2 Vern. 156. Justice to the State requires that both parties should be stripped of their titles. Walker's grants ought not to be cancelled and Avery's be let to stand, nor ought Walker to be *Page 83 
compelled to convey his title to Avery, to enable him the better to defend himself against claims of the State.
This case comes on upon a motion to dismiss the bill. In support of that motion, the defendant's counsel allege that the lands were not the subject of entry at the time when the complainant made his entry — they were parts of the lands reserved to the Indians for their hunting ground, as is declared by the act of Assembly passed in 1783, ch. 2. And it is contended that, notwithstanding the treaty with the Cherokees, of 1791, by which their title became extinct, the lands did not thereby become the subject of entry, without some further legislative act. We do not deem it necessary to decide the question at this time; (160) because, admitting the entry to be good, there is another objection, which, being sustained, must have the effect to dismiss the bill.
The bill states that the surveys were made by the complainant himself, under an authority to do so from the surveyor for the county. It does not state, that he or the chain-carriers were sworn.
An act of Assembly passed in 1777, ch. 1, directs the manner in which a surveyor shall be appointed, and prescribes the oaths that shall be taken, and directs that bond and security shall be given for the faithful discharge of his duties of office. By another act, passed in 1779, ch. 6, s. 5, surveyors are authorized to appoint deputies; but, before entering on the duties of office, they also must take an oath of office. The first mentioned act declares, that no surveys shall be made without chain-carriers, who shall actually measure the land surveyed, and shall be sworn to measure justly and truly, and to deliver a true account thereof to the surveyor, who is authorized to administer such oath.
There was, at that time, much vacant land in the State, and it was deemed expedient by the Legislature, to dispose of it to individuals. the entry-takers, surveyors, and chain-carriers were the persons on whom the trust devolved of parcelling it out, as the different acts direct. When an entry was made of land, and a warrant of survey issued, it was the duty of the surveyor to survey as much land as the warrant called for, and no more or less; nor has the law authorized or trusted any other person to do it.
If the complainant had qualified as a deputy surveyor, he could not be permitted to survey his own land: there would be no necessity for it. Such surveys may be made by the surveyor or other deputies. Whether the principal surveyor can survey *Page 84 
land for himself, need not be decided in this case. The complainant, as deputy surveyor, surveyed for himself, without being sworn, or having sworn chain-carriers. Upon his (161) location thus made, we are called on to superadd the legal title which, it is charged, is in the defendant. The bill further states that Walker was authorized by the surveyor to survey land for himself; but, that in fact, he never did survey them, but took the surveys from the complainant's field-book: and that upon such surveys, he obtained his grants from the State. We are called upon to recognize that title, and compel the defendant to transfer it to the complainant — a title, however improperly obtained, which would complete the complainant's right to the land; though he has a few merits on his side, and as little equity to call for it, as the defendant had when he acquired it.
The complainant's surveys were not made as the law requires; and if they are to be countenanced, and it shall be said that every person may be his own surveyor, those strong guards which the law fixed against fraud and imposition, will be at once broken down. What security have we, that twice the quantity of land is not included in the complainant's surveys, that he entered and paid for? I cannot doubt in the case. The bill must be dismissed with costs. *Page 85